# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Criminal Action No. 2017-0035 |
| ) | |
| **ROOSEVELT DOWLING,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**Attorneys:**
**Meredith J. Edwards, Esq.,**
St. Thomas, U.S.V.I.
   *For the United States*

**Jason Gonzalez-Delgado, Esq.,**
Hato Rey, PR
   *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

During a hearing to address Defendant Roosevelt Dowling's ("Defendant" or "Dowling") "Motion to Suppress Evidence and/or *Franks* Hearing," (Dkt. No. 17) ("Motion to Suppress") and the Government's opposition thereto (Dkt. No. 18), the Court denied Defendant's request for a *Franks* hearing and advised the parties that its reasons therefor would follow at a later date.[1] This Opinion contains the Court's reasons for its denial of a *Franks* hearing.

## I. BACKGROUND

On January 25, 2017, Drug Enforcement Administration ("DEA") Task Force Officer David Wyrzykowski ("TFO Wyrzykowski") applied for a search warrant for Dowling's residence

---

[1] The hearing was, in effect, a pre-*Franks* hearing to determine whether Defendant had made a sufficient showing to warrant a *Franks* hearing.

located at 21D La Grande Princesse in St. Croix and another search warrant for Dowling's vehicle, a red 2007 BMW. TFO Wyrzykowski's affidavits, which were identical for each of the search warrants, included the following information that he obtained from his Confidential Source ("CS"), Mae Agnes Brewster ("Brewster"):

- **Paragraph No. 11**: On September 19, 2016, at approximately 3:08 p.m., your affiant received a phone call from a reliable confidential source (hereinafter referred to as CS) in regards to Roosevelt DOWLING. The CS stated that when he/she arrived at 21D La Grande Princesse he/she personally observed DOWLING place several large plastic baggies of crack cocaine in a baby wipes container which was then placed in a large dark red Tupperware container outside of the residence near the fence line. The CS indicated that Roosevelt DOWLING then covered the container with trash to avoid detection. The CS has provided photographs to substantiate his/her claims regarding the placement of the crack cocaine within the Tupperware container. See Photographs A and B attached.

- **Paragraph No. 12**: Between approximately August 18, 2016, and January 10, 2017, the CS provided your affiant with digital photographs of DOWLING cooking crack cocaine in the kitchen of his residence; as well as photographs with kilogram quantities of cocaine and multiple pre-packaged retail quantities of cocaine allegedly inside 21D La Grande Princesse (captured and transferred to your affiant on several occasions within the timeframe highlighted above). See Photographs C and D. The CS also provided your affiant with information that DOWLING "cooked" crack cocaine approximately two (2) to three (3) times a week. Additionally, the CS stated DOWLING "cooked" two (2) to three (3) ounces of crack per session. The CS added that once the crack was manufactured, DOWLING hides the completed product in the bushes surrounding, but within the curtilage, of his residence. This information is based on the personal observations of the CS. CS has observed DOWLING involved in the possession and cooking of cocaine as recently as early January 2017.

- **Paragraph No. 15**: On January 19, 2017, your affiant received a phone call from the CS who stated that he/she personally observed DOWLING on that day transfer large quantities of crack cocaine into the red BMW 328 bearing license plate number CDL-600, for distribution throughout St. Croix. The CS made similar observations during the past five months.

- **Paragraph No. 16**: On January 19, 2017, at approximately 5:14 p.m., the CS provided your affiant with digital photographs of DOWLING cooking crack cocaine in the kitchen of his residence; as well as photographs of multiple pre-packaged retail quantities of crack cocaine allegedly inside 21D La Grande Princesse (captured and transferred to your affiant) taken on January 19, 2017. See Photographs E, F and G.

- **Paragraph No. 18**: On the same day, January 19, 2017, at approximately 6:53 p.m., your affiant made contact with the CS who stated that DOWLING had left the residence of 21D La Grande Princesse approximately five (5) to ten (10) minutes with his product to make deliveries. The CS also stated that DOWLING was driving his red BMW bearing license plate number CDL-600.[2]

(Government Ex. Nos. 1 and 2). The affidavits also included several paragraphs which detailed Dowling's previous criminal history, including a conviction in 2015 stemming from his arrest wherein Dowling was in possession of approximately 13 pieces of crack cocaine (Paragraph Nos. 4-5), and the results of a welfare check conducted by the Virgin Islands Territorial Marshals and Probation Officers in 2016 wherein the Marshals and Probation Officers seized, among other things, 292 marijuana plants, $36,125 in U.S. currency, and 42.7 grams of crack cocaine from Dowling's residence at 21D La Grande Princesse. *Id*.

Magistrate Judge George W. Cannon, Jr., issued search warrants for Dowling's residence and vehicle. *Id*. On January 30, 2017, members of the DEA St. Croix Resident Office executed the warrants. The search resulted in the seizure of distribution amounts of crack cocaine and cocaine, drug paraphernalia, and a large undetermined amount of U.S. currency. Outside of the residence, officers seized 19 marijuana plants in various stages of growth. In addition, on the same day, a motor vehicle stop was conducted on a red BMW operated by Dowling. During the post-arrest search, officers seized vials of marijuana from his person. (Criminal Action No. 17-mj-0004, Dkt. No. 1-1 ¶¶ 4-5).[3]

---

[2] In Paragraph No. 17, TFO Wyrzykowski stated that, "On the same day [January 19, 2017], at approximately 6:40 p.m., a member of the DEA Saint Croix HIDTA Office made contact with your affiant and stated that he observed a red BMW bearing license plate number CDL-600 driven by Roosevelt DOWLING, heading west in the vicinity of One Love Gas Station, located at the intersection of Highway 75 and Route 751."

[3] Prior to the Indictment, the Government commenced this action by filing a Criminal Complaint on January 30, 2017 in Criminal Action No. 17-mj-0004. (Dkt. No. 1).

On April 13, 2017, Brewster gave testimony before a grand jury which, in some instances, contradicted information she had previously provided to the Government. (Dkt. No. 17 at 8-9). Brewster also submitted two letters—one dated June 9, 2017 and the other dated September 13, 2017—to Magistrate Judge Cannon, where she admitted to "lying" to law enforcement about the allegations she made against Dowling. (Dkt. No. 17-1, Def. Exs. A & B). She explained that she lied because: (1) she was mad at Dowling for putting her out of his house, having a relationship with another woman, and trying to get her to stop using drugs; and (2) she needed money to buy drugs so she lied to the authorities to get money. *Id*.

In her letter dated June 9, 2017, Brewster stated:

> I think [the DEA] already know that I use drugs and was lying to them[,] all they wanted was Dowling[,] they know that I use drugs and needed money . . . now I am afraid they keep telling me they will put me in jail if I don't want to keep on lying[.]"

(Dkt. No. 17-1, Def. Ex. A). She also requested that the Government should "leave me alone. I don't want to go back to jail but I don't want to lie anymore[,] they keep asking me about drugs in the house so I hide some in the bathroom thinking they and Dowling will never find it." *Id*. Brewster also stated that she no longer wanted to be involved in the case against Dowling because she "lied for the money to get drugs. I don't want to keep on lying. I do not remember, I was high all the time . . . Since that day, when all this began, whatever I say or what they want me to say will be a lie or a make-up story. I was using drugs too hard to really remember what was real and what wasn't real." (Dkt. No. 17-1, Def. Ex. B).

On August 15, 2017, the Government filed an Indictment against Dowling charging him with: (1) Possession of Crack Cocaine With Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (2) Possession of Cocaine Powder With Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and (3) Possession of Marijuana With Intent

4

to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). (Dkt. No. 1). Dowling subsequently filed a motion seeking to suppress all evidence obtained during the January 30, 2017 search of his residence and vehicle. (Dkt. No. 17). In the context of that motion, Dowling presented his arguments in support of his request for a *Franks* hearing.

Dowling asserts that the search warrants that were executed on his residence and vehicle lacked probable cause and are thus invalid because the supporting affidavits contained false statements and omissions. Specifically, Dowling alleges that TFO Wyrzykowski's statements were either intentionally false or made with reckless disregard for the truth, as they used what Dowling contends was false information provided by Brewster, who was TFO Wyrzykowski's informant. *Id*. at 2, 13. Dowling argues that the Government knew that Brewster's information was "unreliable and untrustworthy" because TFO Wyrzykowski was aware that she was a "known drug addict" and that she "was not being truthful with [him] regarding the information she was providing." *Id*. at 2, 13. Moreover, Dowling contends that Brewster's drug use, which was omitted from the affidavits, was information that should have been presented to the Magistrate Judge. Dowling argues that Magistrate Judge Cannon was "misled" and that his finding of probable cause was "plagued by false statements provided by TFO [] Wyrzykowski." *Id*. at 13.

The Government opposes Dowling's request for a *Franks* hearing, arguing that Dowling's request should be denied because the latter does not make a substantial preliminary showing that false statements were included in the affidavit. (Dkt. No. 18 at 1, 4). Thus, the Government contends that, contrary to Dowling's assertion, the search warrants are not invalid because they were prepared truthfully by TFO Wyrzykowski and were supported by probable cause. *Id*. at 3.

The Court agrees with the Government and finds that Dowling's arguments are insufficient to support his request for a *Franks* hearing. Accordingly, Defendant's "Motion to Suppress Evidence and/or *Franks* Hearing" will be denied.

## II. APPLICABLE LEGAL PRINCIPLES

The Fourth Amendment to the United States Constitution provides:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Accordingly, the threshold requirement for issuance of a warrant is probable cause. *United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005). This, according to the Supreme Court, is the "bulwark of Fourth Amendment protection." *Franks v. Delaware,* 438 U.S. 154, 164 (1978).

A warrant is determined to be supported by probable cause if, "based on a totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir. 1997) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) ("Th[e] determination [of probable cause] does not require absolute certainty that evidence of criminal activity will be found at a particular place, but rather that it is reasonable to assume that a search will uncover such evidence."). Thus, "a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause," so that a judicial officer can "make an independent evaluation of the matter." *Franks,* 438 U.S. at 165.

An affidavit of probable cause supporting a search warrant is generally presumed to be valid. *See Yusuf*, 461 F.3d at 383. However, in *Franks*, the Supreme Court established a

defendant's right to challenge the truthfulness of statements made by law enforcement agents in an affidavit used to secure a search warrant. *Id*. This right has also been interpreted to permit challenges based on factual omissions from the warrant affidavit. *United States v. Heilman*, 377 F. App'x 157, 177 (3d Cir. 2010). If a defendant is successful in proving—by a preponderance of the evidence—that a warrant was issued based on "a false statement that was both material to the finding of probable cause and made either knowingly and intentionally or with reckless disregard for the truth," then evidence obtained pursuant to the warrant must be suppressed. *United States v. Brown,* 631 F.3d 638, 641-42 (3d Cir. 2011) (citing *Franks,* 438 U.S. at 155-56); *United States v. Frost,* 999 F.2d 737, 743 (3d Cir. 1993) ("Thus, in order to secure suppression of the fruits of the search, a defendant must show both that bad faith or reckless disregard existed on the part of the affiant, and that there would have been no probable cause but for the incorrect statement.").

To warrant a *Franks* hearing, a defendant must first make a "substantial preliminary showing" that the affidavit contained a false statement which (a) was made knowingly and intentionally or with reckless disregard for the truth and (b) is material to the finding of probable cause. *Heilman*, 377 F. App'x at 177 (citing *Franks,* 438 U.S. at 155-56); *Yusuf,* 461 F.3d at 383. "The preliminary-showing requirement is intended to 'prevent the misuse of a veracity hearing for purposes of discovery or obstruction.'" *Heilman*, 377 F. App'x at 177 (quoting *Franks,* 438 U.S. at 170-71).

To make this preliminary showing, a defendant must first specifically identify the alleged false statements or omissions in the warrant affidavit that were made knowingly and intentionally, or with reckless disregard for the truth, and provide a statement of reasons supporting the argument. *Franks,* 438 U.S. at 171. A defendant cannot rely on conclusory allegations. *Id*. ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must

be supported by more than a mere desire to cross-examine."). Rather, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id*. [4] Moreover, "the Third Circuit has held that what matters in the context of a *Franks* hearing is not the informant's truthfulness or untruthfulness, but rather, the affiant's." *United States v. Darby*, 2015 WL 13344905, at *6 (M.D. Pa. Aug. 19, 2015), *aff'd*, 684 F. App'x 219 (3d Cir. 2017) (citing *United States v. Brown*, 3 F.3d 673, 677 (3d Cir. 1993) ("It is well-established that a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing") (emphasis in original)); *see also Franks*, 438 U.S. at 171 (finding that the determination of whether or not a warrant affidavit is valid focuses on the truthfulness of the *affiant*, and not the truthfulness of any government informant). "Allegations of negligence or innocent mistake are insufficient." *Id*.

If a defendant does not make this "substantial preliminary showing," his request for a *Franks* hearing fails. *Brown,* 3 F.3d at 677. If a defendant makes a substantial showing that the affidavit contained knowing and intentional, or recklessly false, information, the Court must then determine whether the false information was "material" to the finding of probable cause. *Yusuf*, 461 F.3d at 383-84. In determining the materiality of the information, if probable cause remains after the affidavit has been "corrected" by either excising the false information or supplying the omitted information, the disputed statements were *not* "material" and a *Franks* hearing is not required. If probable cause does not exist after such correction, the disputed statements were "material" and the defendant is thus entitled to a *Franks* hearing. *Franks*, 438 U.S. at 172;

---

[4] A defendant must "provide an offer of proof or give a satisfactory explanation for the absence of proof." *Id*. For example, he must present an "offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *Yusuf,* 461 F.3d at 383 n. 8 (citing *Franks,* 428 U.S. at 171).

*Sherwood*, 113 F.3d at 399-402; *United States v. Dennis*, 2011 WL 3515903, at *7-8 (D.V.I. Aug. 11, 2011).

### III. DISCUSSION

Dowling first asserts that TFO Wyrzykowski's affidavit contains several material misstatements. (Dkt. No. 17 at 5). Dowling points to the two letters Brewster sent to Magistrate Judge Cannon and the contradictions in her grand jury testimony as evidence that Brewster lied about the information she provided to the DEA, including to TFO Wyrzykowski. (Dkt. No. 17 at 8-9). Dowling argues that because Brewster "admits to having lied to [Wyrzykowski and the other case agents] in order to obtain money to buy drugs," *id*. at 2, and because "she was coerced by the [c]ase [a]gents to continue lying or they [would] put her in jail," *id*. at 9, TFO Wyrzykowski should not have utilized Brewster's information in his affidavit. According to Dowling, TFO Wyrzykowski "had knowledge [] or at least a reasonable suspicion that [Brewster] was using drugs and/or was not being truthful," *id*. at 13, but nonetheless chose to "rel[y] on false statements made by [] Brewster that led to an erroneous and improper determination of probable cause, in reckless disregard of the truth . . ." *id*. Dowling argues that, by "intentionally" or "recklessly" relying on Brewster's information and by using it in his affidavit, TFO Wyrzykowski provided the Magistrate Judge with misleading information. *Id*. at 18.[5]

---

[5] At the pre-*Franks* hearing, Dowling's counsel proffered that Brewster would testify that not only was the information she provided to TFO Wyrzykowski false, but that the photographs that she sent to him, which were submitted with the affidavits, were also misleading. According to counsel, Brewster would testify that the photographs showing drugs were not taken in Dowling's residence and the photograph of Dowling in the kitchen did not actually involve him cooking crack cocaine—as she initially represented and what was reported in the affidavit—but only depicted Dowling cooking. This unsworn information, of course, does not appear in Brewster's letters, and is thus even less worthy of consideration than her letters in determining whether a *Franks* hearing should, in fact, be held.

9

Second, during the hearing, Dowling asserted that TFO Wyrzykowski should have included the fact that Brewster was a known drug addict in his affidavit as information for the Magistrate Judge to consider. Dowling argued that, by omitting this information, the Magistrate Judge did not have the full circumstances before him to determine Brewster's reliability as an informant. Dowling asserted that TFO Wyrzykowski intentionally did not disclose this information for fear that it might affect the issuance of the warrant.

Finally, Dowling argues that when "purged of said falsities[,] the affidavit[s] fail[] to establish probable cause" (Dkt. No. 17 at 2), thus warranting a *Franks* hearing.[6]

1. **Alleged False Statements**

The Court finds that Dowling has not made a "substantial preliminary showing" to warrant a *Franks* hearing.

As a preliminary matter, it is doubtful that Brewster's letters constitute acceptable proof under *Franks* to meet a "substantial preliminary showing" of false statements because the letters are not "[a]ffidavits or sworn or otherwise reliable statements of witnesses[.]" *Franks*, 438 U.S. at 171. Further, while the letters are replete with assertions that Brewster lied to the DEA (which was incorrectly identified by Brewster as the FBI in her letters), they are short on specifics as to

---

[6] Dowling also argues that the statements TFO Wyrzykowski made regarding information he received from an individual who allegedly was a known crack cocaine user, and whom the authorities questioned during a traffic stop after he was observed leaving Dowling's residence on January 28, 2016—wherein he admitted to purchasing crack cocaine at Dowling's residence—also had no indicia of reliability because the individual's statement was essentially hearsay. This argument lacks merit because "hearsay may be the basis for issuance of the warrant so long as there is a substantial basis for crediting the hearsay." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). Here, the information from the individual was derived from both the affiant's personal observation and the result of the DEA's traffic stop of the individual at the time of the incident. Moreover, Dowling provides no evidence that the information from the individual was false, let alone that any false statement was made knowingly and intentionally or with reckless disregard for the truth by the affiant.

precisely what she lied about, thus, in turn, making it difficult to identify the false statements in the affidavits and ultimately determine their materiality. *See Heilman*, 377 F. App'x at 177. In addition, there is no indication in the letters that Brewster told TFO Wyrzykowski that she was lying before he filed the affidavits in support of the search warrants. There are only speculative or conclusory statements regarding his knowledge.[7]

Even assuming that Brewster's letters are sufficient to establish a "substantial preliminary showing" that the affidavits contain false statements, there is no such showing that TFO Wyrzykowski included such false statements knowingly and intentionally or with reckless disregard for the truth. *See e.g., United States v. Tutis*, 167 F. Supp. 3d 683, 699 (D.N.J. 2016) (finding that defendant has not made the substantial showing necessary to obtain a *Franks* hearing because he has made no showing that the officer knowingly, intentionally, and/or recklessly made a false statement).

First, there is no showing of knowing and intentional conduct by TFO Wyrzykowski. Dowling relies instead on conclusory allegations about TFO Wyrzykowski's knowledge pertaining to the falsity of Brewster's information.[8] Such allegations are devoid of any substantive value and

---

[7] At the hearing, Dowling's counsel admitted that he, in fact, did not know exactly what Brewster had lied about, which is why he wanted her to testify at a *Franks* hearing. Brewster's testimony at that juncture would have been premature. Instead, the Court inquired of counsel whether there was anything in the record which it may use to determine what was false about TFO Wyrzykowski's affidavits. Defendant's counsel conceded that there was in fact nothing in the record, except what was included in his Motion to Suppress. Accordingly, the Court's determination is based on the exhibits included in the Motion and the Government's exhibits that were admitted into evidence at the hearing.

[8] For example, at the hearing and in his Motion to Suppress, Dowling repeatedly claimed that Brewster's admission in her letters of lying to the Government in order to get money to buy drugs, and the inconsistency in her grand jury testimony, were evidence that TFO Wyrzykowski knew or should have known that Brewster's information was at the very least unreliable. (Dkt. No. 17 at 5-9, 12-14). Equally conclusory, and therefore lacking any factual basis, is Dowling's assertion that because the DEA, including TFO Wyrzykowski, wanted Dowling "no matter what," he

they are insufficient to meet a substantial preliminary showing necessary to warrant a *Franks* hearing. *Franks*, 438 U.S. at 171; *see also United States v. Harvey*, 2 F.3d 1318, 1323 (3rd Cir. 1993) (rejecting *Franks* challenge because defendant "offers nothing to substantiate his claims."). "It is well established that a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing . . . [instead what is required is] a substantial preliminary showing of intentional or reckless falsity *on the part of the affiant*." *Brown,* 3 F.3d at 677 (emphasis added); *see also United States v. Rivera*, 524 F. App'x 821, 826 (3d Cir. 2013) ("Even if the information provided by the informants was unreliable, [defendant] has offered no evidence that the detective who provided the affidavit either knew that the information was not true or recklessly disregarded its falsity."). "*Franks* requires that a Defendant make some substantive preliminary showing that an affidavit contains knowingly [and intentionally] false information. Defendant's information and belief is a fatally insufficient basis to merit a *Franks* hearing." *Dennis*, 2011 WL 3515903 at *9 (internal citation and quotations omitted).

Also lacking is a sufficient showing that TFO Wyrzykowski acted with reckless disregard of the truth. "An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000).

Here, there is no evidence in the record to suggest that TFO Wyrzykowski suspected—or had reason to suspect—Brewster was lying to him when he drafted and submitted the affidavits. Indeed, Dowling relies primarily on the allegation that Brewster was a "drug addict." This does

---

disregarded the fact that he knew Brewster could be lying to him. In addition to the conclusory nature of the allegations, it should be noted that Brewster's admissions and grand jury testimony occurred *after* the affidavits were submitted.

not automatically indicate that she was a liar or that her information was not credible. In *Heilman*, a Third Circuit panel found that defendant failed to provide the requisite preliminary showing to warrant a *Franks* hearing, refuting defendant's assertion that he warranted such a hearing because the warrant affidavit relied almost exclusively on a confidential informant ("CI") who was a "known methamphetamine user and trafficker who ha[d] a myriad of reasons to provide false information to law enforcement." 377 F. App'x at 178-79 ("The fact that the CI in question is a methamphetamine user does not, in and of itself, indicate that any testimony he gave was false or unreliable.").

Similarly here, TFO Wyrzykowski's affidavit heavily relied on the information from Brewster, whom Dowling alleges was a "known drug user." However, Dowling has offered no evidence that TFO Wyrzykowski knew that Brewster was a drug user *before* her submission of letters to the Magistrate Judge or *before* TFO Wyrzykowski drafted his affidavits. Even assuming that he had such knowledge, known drug use does not automatically translate into false statements, nor any such suggestion of falsity. Thus, Brewster's claimed "known drug use[]" does not establish a sufficient basis for concluding that TFO Wyrzykowski included false statements knowingly and intentionally or with reckless disregard for the truth.

Dowling's failure to make a substantial preliminary showing that the alleged false statements were made knowingly and intentionally, or with reckless disregard for the truth, is fatal to his request for a *Franks* hearing. *Brown*, 3 F.3d at 676-78.[9] Accordingly, Dowling's request for

---

[9] It is evident here that Dowling has not satisfied the preliminary threshold for a *Franks* hearing because he has failed to meet even the first prong of the inquiry requiring him to provide evidence that the affidavit contained a false statement which was made knowingly and intentionally, or with reckless disregard for the truth. *Franks,* 438 U.S. at 155-56. Consequently, the Court does not need to address the second prong, which determines whether the alleged false statements or omission are material to probable cause. As a panel of the Third Circuit has noted: "There is simply no requirement in *Franks* that a district court decide both deliberate falsehood and materiality before

13

a *Franks* hearing based on alleged false statements in the warrant affidavits will be denied.

### 2. Alleged Omission of Facts

Defendant's argument that he merits a *Franks* hearing because the warrant affidavits omitted the fact that Brewster is a "drug addict" is also unavailing. The fact that Brewster was a drug addict, without more, is insufficient to show that TFO Wyrzykowski's omission of this fact was knowing and intentional or reckless. "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know." *Wilson,* 212 F.3d at 783. Further, "recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Id*. at 788. In view of the affidavits' contents. which bear on Brewster's reliability, Dowling has failed to make a sufficient showing that the omission by TFO Wyrzykowski was either knowing and intentional or reckless.

Here, again, there is no showing of knowing and intentional conduct on the part of TFO Wyrzykowski to omit Brewster's drug use from Magistrate Judge Cannon's consideration. As to recklessness, while it can be argued that "any reasonable person would want to know"—and certainly a judge determining probable cause—that the informant here was a drug addict, TFO Wyrzykowski sufficiently presented, as required by *Franks*, the "underlying circumstances from which [his] informant concluded that relevant evidence might be discovered, and some of the

---

denying a defendant a *Franks* hearing; rather, the burden is on the defendant to make the requisite preliminary showing that he can satisfy both prongs to be entitled to such a hearing. Thus, if a district court determines the defendant has failed to make that showing with respect to either prong, there is no need for the court to proceed any further for the defendant then is not entitled to a hearing, much less suppression." *United States v. Gordon*, 664 F. App'x 242, 245 (3d Cir. 2016), *cert. denied,* 137 S. Ct. 1124 (2017).

underlying circumstances from which [TFO Wyrzykowski] concluded that the informant . . . was 'credible' or h[er] information 'reliable." *Franks*, 438 U.S. at 165.

In this regard, TFO Wyrzykowski's affidavit described in detail how Brewster "concluded that relevant evidence might be discovered" in Dowling's residence because she reported being at his residence and personally observing Dowling cook crack cocaine, package it, and hide it around his property. At one point, Brewster specifically described how the drugs were placed in a "baby wipes container" and in "red Tupperwares" and hidden near Dowling's fence line under trash. By including photographs that Brewster sent which corresponded to the information she provided, this gave support for TFO Wyrzykowski's conclusion that Brewster's information was "reliable." Moreover, TFO Wyrzykowski's affidavit contained evidence that one of Brewster's tips was corroborated by one of the other case agents. In Paragraph 18, Brewster reported that Dowling had left his residence on January 19, 2017 with drugs to make his deliveries, and one of the case agents confirmed that he in fact observed Dowling leave his residence at the given time. The Court finds that this corroboration and the photographs which accompanied the affidavit, are sufficient to infer that, at the time he drafted and submitted his affidavits to the Magistrate Judge, TFO Wyrzykowski had reason to believe that Brewster was "credible."

However, "[c]ourts have routinely recognized a distinction between information provided by an informant and that provided by a law enforcement officer or other government agency. Informants are not presumed to be credible, and the government is generally required to show by the *totality of the circumstances* either that the informant has provided reliable information in the past or that the information has been corroborated through independent investigation." *Yusuf*, 461 F.3d at 384-85; *see also Ritter,* 416 F.3d at 263 ("Where corroboration or independent investigation after receipt of an anonymous tip is lacking—and thus the predictive value of the tip

15

goes untested before a warrant is issued—courts have found officers' subsequent reliance on the warrant unreasonable.") (emphasis added).

Here, although there was only one instance where Brewster's information was independently corroborated by a case agent, the absence of further corroboration was not fatal under these circumstances, due to the DEA's prior knowledge of Dowling and his drug activities. In *Ritter*, the Third Circuit confirmed that the issuance of the warrant in that case was proper even though the officer, after receiving an anonymous tip call, made no attempt to verify the informant's allegations through further independent investigation. The appellate court reasoned that despite this deficiency, the officer had "relevant previous experience with the property in question, [and] included this 'historical information [regarding] the previous seizure in August 2002' in his affidavit." *Ritter*, 416 F.3d at 263. Moreover, the *Ritter* court noted that the officer's "previous observation, the similarity of the type of offense, the fact that the current tip involved both the house and the surrounding outdoor area . . . all point to the plausible relationship between the previous event and the tip. We can see how an officer and a magistrate could view the tip as establishing an identifiable pattern of activity on the premises." *Id.*; *see also United States v. Stearn,* 597 F.3d 540, 557 and 562 (3d Cir. 2010) (identifying the use of prior arrests or convictions for drug offenses and "activity evocative of drug dealing" as supportive of probable cause to search for evidence of a narcotics offense).

According to TFO Wyrzykowski's affidavits, the DEA was already familiar with Dowling's criminal history. Specifically, as a result of Dowling's conviction in a similar case in 2015, surveillances had already been conducted of his residence prior to receiving information from Brewster. Further, in March 2016, during a welfare check conducted by the Virgin Islands Territorial Marshals and Probation Officers, Dowling was found with both marijuana and crack

16

cocaine at the same address where the warrant was executed. Thus, as in *Ritter*, the circumstances here supported a "plausible relationship" between Dowling's history and the information provided by Brewster, which could result in TFO Wyrzykowski and the Magistrate Judge viewing Brewster's information as "establishing an identifiable pattern of activity on the premises." 416 F.3d at 263. This pattern, together with the similarity of the offenses, rendered further investigation into the reliability of Brewster's statements by the DEA or TFO Wyrzykowski unnecessary for purposes of the issuance of a warrant. In short, TFO Wyrzykowski and the Court were able to have reliably relied on Brewster's information.

Accordingly, the fact that Brewster's drug use was omitted from TFO Wyrzykowski's affidavits does not constitute a "substantial preliminary showing" of recklessness on his part because there is no showing that TFO Wyrzykowski "demonstrate[d] [a] willingness to affirmatively distort the truth" about the matter. *Wilson,* 212 F.3d at 788. To the contrary, the factors which suggested that the information provided by Brewster could be relied upon properly allowed the Magistrate Judge to determine probable cause, even in the absence of information regarding Brewster's alleged drug addiction.

Moreover, even if one were to assume that the omission of Brewster's drug use was reckless and thus the materiality of this information must be assessed, this would not alter the Court's conclusion. Indeed, probable cause clearly remains even if this information were to be included in the affidavits since information that Brewster was a drug addict does not negate the force of the detailed information and photographs she provided, particularly when coupled with the prior knowledge of Dowling possessed by the DEA as discussed above. Because probable cause exists even after the omitted information is included, the omitted information is not material and a *Franks* hearing is not warranted.

For the foregoing reasons, the Court finds that Dowling has failed to make a substantial preliminary showing that the information regarding Brewster's drug addiction was omitted from the affidavits knowingly and intentionally or recklessly, or that such omission was material to the finding of probable cause. Accordingly, Dowling's request for a *Franks* hearing based on the omission shall be denied.

### III. CONCLUSION

In view of the foregoing, the Court concludes that Dowling has failed to provide a substantial preliminary showing to warrant a *Franks* hearing. Accordingly, Dowling's "Motion to Suppress Evidence and/or *Franks* Hearing" will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Dated: December 31, 2018 _____/s/_____
WILMA A. LEWIS
Chief Judge