# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 2017-0035 |
| ) | |
| ROOSEVELT DOWLING, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**Attorneys:**
**Meredith J. Edwards, Esq.,**
St. Thomas, U.S.V.I.
*For the United States*

**Jason Gonzalez-Delgado, Esq.,**
Hato Rey, PR
*For Defendant*

## **MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER is before the Court on two pre-trial motions filed by Defendant Roosevelt Dowling ("Dowling" or "Defendant")—Defendant's "Motion to Suppress Evidence and/or *Frank's* Hearing," ("Motion to Dismiss"), where he seeks, *inter alia*, to dismiss the Indictment due to the alleged presentation of perjured testimony to the Grand Jury (Dkt. No. 17), and Defendant's "Motion to Suppress Evidence" ("Motion to Suppress"), where he argues that law enforcement exceeded the scope of the search warrant executed on his property and that the fruits of the unauthorized search should therefore be suppressed (Dkt. No. 51). The Government opposed both motions (Dkt. Nos. 49 and 54), and the Court heard the parties' oral arguments at a hearing. For the following reasons, the Court will deny both of Defendant's Motions.

# I. PROCEDURAL BACKGROUND

On August 15, 2017, Dowling was charged by Indictment with: (1) Possession of Crack Cocaine with Intent to Distribute; (2) Possession of Cocaine Powder with Intent to Distribute; and (3) Possession of Marijuana with Intent to Distribute—all violations of 21 U.S.C. §§ 841(a)(1) and (b)(1).[1] (Dkt. No. 1).

Dowling's Motion to Dismiss dealt primarily with his request for a *Frank's* hearing, wherein he contested the veracity of statements made by Drug Enforcement Administration ("DEA") Task Force Officer David Wyrzykowski ("TFO Wyrzykowski") in his application for the search warrants executed upon Dowling's residence and vehicle on January 30, 2017. (Dkt. No. 17). The Court ruled that Dowling had failed to make the requisite substantial preliminary showing to warrant a *Frank's* hearing. (Dkt. No. 57). However, Dowling's Motion[2] also contained a request to dismiss the Indictment based on the presentation of allegedly perjured testimony to the Grand Jury (Dkt. No. 17 at 14-17), which the Government had not addressed in its Opposition. Thus, the Court ordered the Government to file a supplemental response addressing this issue. (Dkt. No. 46 at 1). The Government subsequently submitted its supplemental response opposing Dowling's motion to dismiss the Indictment. (Dkt. No. 49).

Further, during the hearing, Dowling raised orally, for the first time, an argument regarding the sufficiency of the warrant—in terms of its scope and specificity—to support the search of his residence. Thus, the Court allowed Dowling to submit a supplemental filing addressing this issue

---

[1] Prior to the Indictment, the Government initiated this action against Dowling by filing a Criminal Complaint on January 30, 2017. (Criminal Action No. 2017-cr-00004, Dkt. No. 1).

[2] As noted earlier, Defendant's Motion was denominated a "Motion to Suppress Evidence and/or *Frank's* Hearing."

2

(Dkt. No. 51), to which the Government filed its opposition (Dkt. No. 54). The Curt now addresses both of Defendant's Motions.

## II. DEFENDANT'S MOTION TO DISMISS INDICTMENT

### A. Factual Background

For purposes of the instant motions, the following facts are not in dispute.[3] Law enforcement officials executed search warrants on Dowling's property on January 30, 2017.[4] (Gov't Ex. Nos. 1 and 2). TFO Wyrzykowski's applications for the search warrants were supported, in large part, by statements from an individual named Mae Agnes Brewster ("Brewster"), who was working as a Confidential Source ("CS") for the DEA and who Dowling contends is a "known drug addict." (Dkt. No. 17 at 2). On April 13, 2017, Brewster gave testimony before the Grand Jury which, in some instances, contradicted information she had previously provided to the Government. These inconsistencies were pointed out to the Grand Jury by the prosecutor during Brewster's examination. *Id*. at 7-9. Following her grand jury testimony, Brewster sent Magistrate Judge George W. Cannon, Jr., two letters: one dated June 9, 2017 and the other dated September 13, 2017. (Dkt. No. 17-1). In these letters, Brewster claimed that she lied to law enforcement about the allegations she made against Dowling. She explained that she lied because: (1) she was mad at Dowling for putting her out of his house, having a relationship

---

[3] The Court bases the background factual discussion in this section on the record established at the hearing. The Court provides this information solely for the purpose of these pretrial motions, ever mindful that Defendant Roosevelt Dowling is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

[4] As noted above, officials had two search warrants that day—one for Defendant's residence and another for his vehicle. The search warrants were supported by the same set of facts sworn to by TFO Wyrzykowski.

3

with another woman, and trying to get her to stop using drugs; and (2) she needed money to buy drugs, so she lied to the authorities to get money. *Id*. at 1-2. In her letter dated June 9, 2017, Brewster further stated:

> I think [the DEA] already know that I use drugs and was lying to them[,] all they wanted was Dowling[,] they know that I use drugs and needed money . . . now I am afraid they keep telling me they will put me in jail if I don't want to keep on lying . . . I [caused] big problem for me and Mr. Dowling with lies and my drug[] use . . . . Please judge I don't want to go to jail but I lie and they the [DEA] know that I needed the money for drug[] use . . .

*Id*. at 1. Brewster also stated that she wanted the Government to "leave me alone. I don't want to go back to jail but I don't want to lie anymore." *Id*. at 2. In her letter dated September 13, 2017, Brewster also stated that she no longer wanted to be involved in the case against Dowling, noting that:

> I lied for the money to get drugs. I don't want to keep on lying. I do not remember, I was high all the time . . . Since that day, when all this began, whatever I say or what they want me to say will be a lie or a make-up story. I was using drugs too hard to really remember what was real and what wasn't real.

*Id*. at 4. Before the Grand Jury returned a true bill, TFO Wyrzykowski read the contents of the June 9, 2017 letter to the body.[5] On August 15, 2017, the Grand Jury returned an Indictment against Dowling. (Dkt. No. 1).

### B. Applicable Legal Principles

The Fifth Amendment requires that an indictment be returned by a legally constituted and unbiased grand jury. *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment

---

[5] In its Opposition, the Government acknowledged that, at the time Dowling filed his Motion to Dismiss, he was aware that Brewster had provided her testimony approximately four months before the Grand Jury returned the Indictment, but he was not aware that TFO Wyrzykowski had read the June 2017 letter to the grand jurors until the court hearing, when the Government offered the information. (Dkt. No. 49 at 4 n.1).

returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."). One basis for dismissing an indictment is prosecutorial misconduct in the grand jury proceedings. *See United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979) (noting that "[a]ware of the potential for [government] abuse inherent in grand jury proceedings, this court and others have increasingly exercised our supervisory power over the administration of justice to regulate the manner in which grand jury investigations are conducted," which may include "order[ing] the dismissal of the indictment as a remedy for prosecutorial misconduct before the grand jury."); *see also United States v. Martino*, 825 F.2d 754, 758–59 (3d Cir. 1987) (noting that "[t]he law is clear, at least in this circuit, that prosecutorial misconduct encompasses at a minimum improper conduct by a prosecutor both at trial, . . . and in connection with grand jury proceedings."); *cf. United States v. Fisher*, 692 F. Supp. 495, 505 (E.D. Pa. 1988) (denying dismissal of indictment due to prosecutorial misconduct partly because the government's "negligence and [its] inadvertent errors" in front of the first grand jury that returned the indictment, "do not rise to the level of prosecutorial misconduct warranting dismissal of an indictment."). Prosecutorial misconduct includes instances where a prosecutor knowingly submits perjured testimony to the grand jury. *Fisher*, 692 F. Supp. at 501.

When faced with a motion to dismiss an indictment based upon prosecutorial misconduct before the grand jury, the Third Circuit requires a trial court to conduct a two-part inquiry. *See Martino*, 825 F.2d at 759; *Fisher*, 692 F. Supp. at 502. First, the court must determine whether prosecutorial misconduct has actually occurred. *Martino*, 825 F.2d at 759; *Fisher*, 692 F. Supp. at 502. "In order to warrant dismissal of an indictment[,] prosecutorial misconduct must be so flagrant that there was some significant infringement on the grand jury's ability to exercise

independent judgment." *Fisher*, 692 F. Supp. at 501 (internal citation and quotation marks omitted). Misstatements or mistakes alone do not warrant the dismissal of an indictment otherwise valid on its face, nor is dismissal appropriate "when there is no evidence of a deliberate attempt by the witness and the prosecutor to mislead." *Id*.

Second, if such conduct has occurred, the court must consider whether any sanction, such as the dismissal of the indictment or the suppression of evidence, is warranted. *Martino*, 825 F.2d at 759. Dismissal of an indictment is appropriate only when there is a finding of prejudice to the defendant. *Bank of Nova Scotia*, 487 U.S. 250, 263 (1988) (a district court may "not dismiss [an] indictment on the basis of prosecutorial misconduct" before the grand jury without making a factual finding that the defendant was "prejudiced by such misconduct); *Martino*, 825 F.2d 754, 759 (3d Cir. 1987) (holding that in determining whether prosecutorial misconduct occurred before the grand jury which would warrant dismissal of the indictment, "in every case we looked to prejudice."); *United States v. Soberon*, 929 F.2d 935, 940 (3d Cir. 1991) ("[T]he presentation of the allegedly perjured testimony to the grand jury" requires "a showing of prejudice," in order to warrant dismissal of the indictment.); *see also Fisher*, 692 F. Supp. at 502 (citing *Martino,* 825 F.2d at 759 (collecting cases)). In turn, a finding of prejudice exists only if it is established that the prosecutor's "'violation substantially influenced the grand jury's decision to indict,' or . . . there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Soberon*, 929 F.2d at 939-40 (quoting *Nova Scotia,* 487 U.S. at 256 (quoting *United States v. Mechanik,* 475 U.S. 66, 78 (1986))).

The Third Circuit has cautioned that "dismissal of an indictment on the basis of governmental misconduct is an extreme sanction which should be infrequently utilized." *United States v. Birdman*, 602 F.2d 547, 559 (3d Cir. 1979) (internal citation and quotation marks

6

omitted); *see also United States v. Bansal*, 663 F.3d 634, 660 (3d Cir. 2011) (noting that "dismissal of an indictment is the most drastic remedy") (internal citation and quotation marks omitted).

**C.     Discussion**

In his Motion to Dismiss, Dowling argues for dismissal of the Indictment because, by using Brewster's testimony, Dowling contends that the Government allegedly presented "essentially false, fabricated and perjured testimony" before the Grand Jury. (Dkt. No. 17 at 17). At the hearing, Dowling further argued that the prosecutor used Brewster as a witness despite the fact that she was an unfit witness—one who was not competent to testify before the Grand Jury because she was a "known drug addict" and the Government allegedly "knew" she was lying. Dowling contends that such serious "prosecutorial misconduct" warrants dismissal because Brewster's perjured testimony "had a material effect in the Grand Jury['s] determination to indict thus affecting its fact-finding function." *Id*. at 16-17.

The Government asserts that Dowling's claim of prosecutorial misconduct is "baseless." (Dkt. No. 49 at 2). First, the Government argues that "[D]efendant failed to establish that [] Brewster's sworn testimony to the [G]rand [J]ury should be disbelieved in favor of her unsworn letter to the Court months after her sworn testimony." *Id*. at 4. Thus, according to the Government, Dowling "failed to establish that the [G]rand [J]ury was ever even presented with perjured testimony." *Id*. Further, the Government argues that Dowling also failed to demonstrate that Brewster's testimony, even if it was perjured testimony, prejudiced him with the Grand Jury. *Id*. The Government contends that no such prejudice occurred because the Grand Jury was "fully apprised of [] Brewster's letter, which [] TFO Wyrzykowski read out loud" to the body before the Grand Jury issued a true bill in August 2017. *Id*.

Based on the parties contentions, there are several issues raised: (1) whether Brewster did,

7

in fact, lie before the Grand Jury; (2) whether the Government knew or had reason to know that Brewster would lie or that she in fact lied before the Grand Jury, and that the Government placed her on the stand regardless of such knowledge; and (3) assuming that Brewster did perjure herself before the Grand Jury with the Government's knowledge, whether prejudice against Defendant resulted, such that dismissal of the Indictment is warranted. The Court addresses each issue in turn.

First, the Court finds that the record is unclear as to whether Brewster did, in fact, lie before the Grand Jury. The contradictions in Brewster's grand jury testimony and the two letters Brewster sent to the Court—which appeared to be an attempt to recant her testimony before the Grand Jury—offer some evidence that Brewster may have perjured herself. However, while Brewster's unsworn letters[6] are replete with assertions that Brewster lied to the DEA (which was incorrectly identified by Brewster as the FBI in her letters), they are short on specifics as to precisely what she may have lied about, thus making it difficult to identify any false statements she may have made before the Grand Jury. Accordingly, the Court here finds that the evidence is, at best, ambiguous as to whether Brewster lied on the stand, and is thus insufficient to conclude that the Government engaged in prosecutorial misconduct in connection with Brewster's grand jury testimony. *See Fisher*, 692 F. Supp. at 503 (finding meritless defendant's argument that the prosecutor's statements to the grand jury regarding when defendant became involved in illegal union activity amounted to prosecutorial misconduct "[g]iven the ambiguity of possible interpretation" of the statements); *see also Soberon*, 929 F.2d at 941 ("Because we find that the

---

[6] Brewster's June 9, 2017 letter was signed only by her, and the September 13, 2017 letter was signed by Brewster and a notary public. In the Court's December 31, 2018 Opinion denying Defendant's request for a *Frank's* hearing, the Court noted that "[a]s a preliminary matter, it is doubtful that Brewster's letters constitute acceptable proof under *Franks* to meet a "substantial preliminary showing" of false statements because the letters are not '[a]ffidavits or sworn or otherwise reliable statements of witnesses[.]'" (Dkt. No. 57 at 10) (quoting *Franks v. Delaware,* 438 U.S. 154, 171 (1978)).

record fails to suggest perjury, we hold that the district court's finding of prosecutorial misconduct based on this imagined perjury is clearly erroneous.").

Even assuming that Brewster lied before the Grand Jury, the Court finds nothing in the record suggesting that the Government knew or had reason to know that Brewster would lie or that she had, in fact, lied before the Grand Jury, prior to receiving her June 2017 letter. During the instances where Brewster in her testimony contradicted the information she had previously provided to the Government, the prosecutor conducting Brewster's examination pointed out the discrepancies to the Grand Jury. See Dkt. No. 17 at 7-9. Further, there is no indication in Brewster's letters that she told her government handler, TFO Wyrzykowski, that she was lying to him. There are only speculative or conclusory statements in her letters regarding his or the DEA's alleged knowledge as to whether Brewster was being truthful. (Dkt. No. 17-1) ("I think the[] [DEA] already know that I use drugs and was lying to them"; "they will put me in jail if I don't want to keep on lying"; "I lie and they the [DEA] know that I needed the money for drug[] use."). There is also no evidence to suggest that TFO Wyrzykowski knew—or had reason to know—that Brewster was lying to him when they worked together.

To succeed in dismissing an indictment on the basis of prosecutorial misconduct resulting from the government's alleged submission of perjured testimony to the grand jury, "[t]he Government must know that the testimony at issue is perjured." *United States v. Liciardello*, 93 F. Supp. 3d 365, 368 (E.D. Pa. 2015) (citing *United States v. Basurto*, 497 F.2d 781, 787 (9th Cir. 1974) (holding that a defendant must not be forced "to stand trial on an indictment which the government *knows* is based partially on perjured testimony") (emphasis added). However, the record is devoid of such knowledge on the part of the Government. Accordingly, because the record does not reveal that the Government knowingly presented false testimony through its use

9

of Brewster as a witness before the Grand Jury, there is no basis for dismissing the Indictment. *Fisher*, 692 F. Supp. at 497, 503-505 (denying dismissal of indictment where defendants allege that the government engaged in prosecutorial misconduct partly because "[t]here [was] nothing in the record to establish that the prosecutor intended to mislead the grand jury . . . by intentionally and knowingly presenting perjured testimony to the grand jury."); *United States v. Sager,* 227 F.3d 1138, 1149 (9th Cir. 2000) (holding that the prosecutor did not violate defendant's due process rights by failing to move to dismiss indictment secured through false material testimony where the prosecutor was unaware that witness was lying, as opposed to making misstatement).

Defendant, however, contends that the Government committed prosecutorial misconduct by presenting Brewster, a "known drug addict," as a witness in the first place. The Court finds this argument unavailing. First, the fact that Brewster was a "known drug addict" does not render the Government's decision to put her on the witness stand a deliberate attempt to mislead the Grand Jury. As previously found by this Court in denying Defendant's request for a *Frank's* hearing, Brewster's drug use by itself "does not automatically translate into false statements, nor any such suggestion of falsity" (Dkt. No. 57 at 17), so as to render Brewster unfit to testify and to subject a prosecutor to a claim of prosecutorial misconduct for offering her as witness. Dowling has offered no evidence showing that Brewster's alleged drug addiction should have alerted TFO Wyrzykowski to the falsity of her testimony. *See e.g., Flores v. United States*, 2010 WL 110265, at *2-4 (N.D. Tex. Jan. 12, 2010) (denying defendant's motion to vacate sentence based on ineffective assistance of counsel, because defendant, who asserted that his counsel failed to object to the court's reliance on statements made by witnesses who were drug addicts, "offer[ed] nothing to support" his assertions—other than conclusory statements—that the witnesses' statements were false and unreliable because the witnesses were drug addicts). Thus, the fact that Brewster may

10

have been a "known drug addict" does not alter the Court's conclusion that evidence of knowledge by the Government that Brewster would lie, or was lying, is lacking.

Finally, the Court "need not reach the issue of prejudice if there has been no misconduct." *Fisher*, 692 F. Supp. at 502. Even assuming, however, that the Court had found that there was indeed prosecutorial misconduct on the part of the Government in putting Brewster on the witness stand during the Grand Jury proceedings—which it has not—there is no evidence that the allegedly false testimony "substantially influenced the [G]rand [J]ury's decision to indict" or resulted in "grave doubt that the decision to indict was free from the substantial influence of such [a] violation[]." *Soberon*, 929 F.2d at 939-40 (internal citations and quotation marks omitted).

Brewster testified before the Grand Jury on April 13, 2017. On or around June 9, 2017, she submitted a letter to the Court wherein she claimed that she had lied to law enforcement about the allegations she made against Dowling. Thereafter, TFO Wyrzykowski read the contents of Brewster's letter out loud to the Grand Jury, prior to its issuance of a true bill on August 15, 2017. Any prejudice caused by Brewster's alleged perjured testimony was cured by TFO Wyrzykowski's reading of Brewster's letter, which fully apprised the Grand Jury of Brewster's assertion that she had lied to law enforcement as well as her motivations for doing so. Thus, because there is no evidence here of prejudice to Dowling, this provides an additional basis for denying Defendant's request to dismiss the Indictment. *See Soberon*, 929 F.2d at 940 (finding that district court erred in dismissing charges against a defendant who had not been prejudiced by the presentation of the alleged perjured testimony to the grand jury); *United States v. Bunty*, 617 F. Supp. 2d 359, 367 (E.D. Pa. 2008) (finding that "[e]ven assuming *arguendo* that the prosecution improperly obtained and utilized certain evidence before the first grand jury, Defendant has failed to set forth any prejudice that resulted at the second grand jury proceeding," during which such improprieties were

eliminated); *Fisher*, 692 F. Supp. at 504 (denying dismissal of indictment due to prosecutorial misconduct because the superseding indictment the government secured "cured any prejudice which may have resulted to these defendants from the prosecutor's prior errors.").

For all the foregoing reasons, Defendant's Motion to Dismiss will be denied.

### III. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

#### A. Factual Background

Dowling's Motion to Suppress (Dkt. No. 51) arises from the search conducted by the DEA of his residence located at 21D La Grande Princesse in Christiansted, St. Croix on January 30, 2017.[7] The following statements are taken from the affidavit of TFO Wyrzykowski, which was submitted with the Criminal Complaint,[8] as well as from a copy of the warrant submitted by Dowling with his Motion to Suppress (Dkt. No. 51-1).

The search warrant was issued by Magistrate Judge Cannon on January 25, 2017. *Id*. The warrant granted authorization to search the following property:

> Plot No. 21D, La Grande Princess[e], St. Croix, Virgin Islands, as more fully described in Attachment "A" (attached to this Search Warrant).

(Dkt. No. 51-1 at 1). Attachment "A" to the warrant reads as follows:

> 21D La Grande Princesse, Christiansted, St. Croix, U.S. Virgin Islands is described as a blue-colored single-family residence that sits on the southwest corner of a large lot with two (2) additional dwellings owned by the DOWLING family . . . The residence is located approximately one hundred yards northeast from the intersection of Northside Road and Old Princesse Road . . . Neither the second or third dwelling is included in this search warrant for 21D La Grande Princeese [sic].

---

[7] The search warrant for Defendant's vehicle is not at issue here.

[8] See Criminal Action No. 2017-cr-00004, Dkt. No. 1-1.

*Id*. at 11.[9] The Affidavit supporting the search warrant application expressed TFO Wyrzykowski's belief that there was probable cause to establish that "*within the premises* of 21D La Grande Princesse, *which is the residence* of Roosevelt DOWLING . . . there is evidence of [illegal conduct]." (Dkt. No. 51-1 at 3-4) (emphasis added). In support thereof, the Affidavit included the following pertinent information:

> On March 3, 2016, the Virgin Islands Territorial Marshals and Probation Officers conducted a welfare check on [] DOWLING at his residence located at 21D La Grande Princesse, Christiansted, Saint Croix. Upon their arrival, [law enforcement] located a marijuana grow at DOWLING'S residence and conducted a search . . . [which resulted] in 292 marijuana plants along with . . . [$36,125.00] . . . which was located inside a PVC pipe buried outside of DOWLING'S residence directly under DOWLING'S bedroom window . . . .
>
> On September 19, 2016 . . . [t]he CS stated that when he/she arrived at 21D La Grande Princesse he/she personally observed DOWLING place several large plastic baggies of crack cocaine in a baby wipes container which was then placed in a large dark red Tupperware container outside of the residence near the fence line . . .
>
> Between approximately August 18, 2016 and January 10, 2017 . . . [t]he CS added that once the crack cocaine was manufactured [by Dowling], DOWLING hides the completed product in the bushes surrounding, but within the curtilage, of his residence. This information is based on the personal observations of the CS.

(Dkt. No. 51-1 at 5-7).

The Magistrate Judge concluded that "the Application and attached Affidavit establish[ed] probable cause to believe that [evidence of drug distribution] is now concealed *on the premises* described above and establish grounds for the issuance of this warrant." (Dkt. No. 51-1 at 1) (emphasis added). Upon the execution of the January 30, 2017 search of 21D La Grande Princesse, law enforcement seized crack cocaine weighing approximately over an ounce and approximately

---

[9] The description found in Attachment "A" was initially incorporated in TFO Wyrzykowski's application for the search warrant. The search warrant, in turn, expressly incorporated by reference Attachment "A." (Dkt. No. 51-1 at 1).

13

800 grams of cocaine packaged into 27 individual bags. (Dkt. No. 1-1¶ 4). The cocaine was concealed inside a tire in the wooded fence line adjacent to the residence. *Id*. In addition, officers also seized two digital scales, commonly used in drug distribution, from the kitchen counter, along with a large undetermined amount of United States currency which was concealed in a hat and in a dresser of a bedroom. *Id*. The currency, according to TFO Wyrzykowski, was packaged in a manner consistent with narcotic proceeds. *Id*. The same bedroom where the currency was discovered also contained identification documents belonging to Dowling. *Id*. Moreover, "outside of the residence, officers seized 19 marijuana plants in various stages of growth." *Id*. ¶ 5.

Dowling moves to suppress certain evidence seized during the search on January 30, 2017. (Dkt. No. 51). Specifically, Dowling seeks to suppress the 19 marijuana plants found just outside of his residence and the packages of cocaine found inside a tire in the wooded fence line adjacent to the residence and located approximately five yards from the main residential structure. *Id*. at 3-4. Dowling argues that, because the search warrant was specifically limited to his actual residence, law enforcement exceeded the scope of the warrant when they searched Dowling's yard and fence line, where they found the plants and the packages of cocaine, respectively. *Id*. at 4, 8-9, and 13.

The Government contends, on the other hand, that the warrant for Dowling's residence, although not specified, encompassed areas considered to be within the residence's curtilage—including Dowling's yard and fence line. (Dkt. No. 54 at 4-6). The Government argues that the yard's inclusion is a "common-sense" application of the warrant, *id*. at 6, because the latter actually described Defendant's property as a "plot" or "premises," both descriptions "clearly encompass[ing] the grounds surrounding the residence." *Id*. at 6-7.

**B.    Applicable Legal Principles**

The Fourth Amendment requires that warrants "shall issue, but upon probable cause,

supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized.*" U.S. Const. amend. IV (emphasis added). This particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found . . ." *Garrison*, 480 U.S. at 84 (internal citation and quotation marks omitted). The particularity requirement is satisfied when "the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). It is well established that "'[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant [ . . . ] the subsequent seizure is unconstitutional without more.'" *Durham v. City & Cty. of Erie*, 2007 WL 838977, at *5 (W.D. Pa. Mar. 15, 2007), *aff'd sub nom. Durham v. McElynn*, 254 F. App'x 892 (3d Cir. 2007) (quoting *Horton v. California,* 496 U.S. 128, 140 (1990)).

In assessing the particularities of a search warrant, courts should avoid "[t]echnical requirements of elaborate specificity once exacted under common law pleadings [as they] have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *see also United States v. Brown*, 822 F. Supp. 750, 754 (M.D. Ga. 1993), *aff'd,* 50 F.3d 1037 (11th Cir. 1995) ("Plain reading and common sense are the landmarks for the execution and interpretation of the language in a search warrant . . . there is no room in the midst of a criminal investigation for hypertechnical reading or interpretation of a search warrant."). Moreover, "it is perfectly appropriate to construe a warrant in light of an accompanying affidavit or other document that is incorporated within the warrant. But to take advantage of this principle of interpretation, the

warrant must expressly incorporate the affidavit." *Doe v. Groody*, 361 F.3d 232, 239 (3d Cir. 2004); *see also Bartholomew v. Com. of Pa.*, 221 F.3d 425, 428 (3d Cir. 2000) ("[w]hen a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant.") (internal citation and quotation marks omitted). Likewise, "[t]he affidavit supporting a search warrant application 'must be read in its entirety and in a common sense and nontechnical manner.'" *United States v. Bagley*, 2015 WL 5725112, at *6 (W.D. Pa. Sept. 29, 2015), *aff'd,* 674 F. App'x 169 (3d Cir. 2017) (quoting *United States v. Williams,* 124 F.3d 411, 420 (3d Cir. 1997)).

However, a defendant must have some expectation of privacy in the area to be searched before the Fourth Amendment can be implicated. *United States v. Wolfe*, 375 F. Supp. 949, 957–58 (E.D. Pa. 1974); *see also United States v. Haugh*, 414 F. Supp. 37, 40 (D.N.J. 1976) ("[T]he scope of Fourth Amendment protection should be based upon the degree of privacy an individual should reasonably expect."). An individual's home carries the highest expectation of privacy, such that it is considered "a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation omitted); *see also Fixel v. Wainwright*, 492 F.2d 480, 483 (5th Cir. 1974) ("The sacredness of a person's home and his right of personal privacy and individuality are paramount considerations in our country and are specifically protected by the Fourth Amendment."). Courts also "regard the area 'immediately surrounding and associated with the home'—what our cases call the curtilage—as 'part of the home itself for Fourth Amendment purposes.'" *Jardines*, 569 U.S at 6 (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)); *accord Estate of Smith v. Marasco,* 318 F.3d 497, 518 (3d Cir. 2003) ("Fourth Amendment protections extend not only to a person's home, but also to the curtilage surrounding the property");

16

*see also Zavec v. Collins*, 2017 WL 3189284, at *5 (M.D. Pa. July 27, 2017) ("individuals ordinarily possess the highest expectation of privacy within the 'curtilage' of their home, [thus] that area typically is 'afforded the most stringent Fourth Amendment protection.'") (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)).

With these principles in mind, numerous courts have held that a search warrant for a defendant's "residence" or "premises," also authorizes the search of the accompanying curtilage—even if the latter is not specifically listed in the warrant. *See e.g.*, *Bansal*, 663 F.3d at 663 (holding that a search warrant describing defendant's "premises" encompassed the curtilage of the residence); *see also United States v. Cannon*, 264 F.3d 875, 880 (9th Cir. 2001) ("[T]he Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes search of the residence."); *United States v. Gorman*, 104 F.3d 272, 273-75 (9th Cir. 1996) ("a search warrant authorizing the search of a residence also authorizes without so stating the search of the residence's curtilage . . . because [t]he curtilage is simply an extension of the residence's living area.") (listing cases); *Brown*, 822 F. Supp. at 753–54 (holding that a warrant describing and authorizing the search of defendant's house authorizes the search of the fenced property surrounding the house); *United States v. Hibbs*, 905 F. Supp. 2d 862, 865 (C.D. Ill. 2012) ("When a search warrant authorizes the search of a residence, it may *implicitly* authorize the search of an area *within the curtilage* of the home.") (collecting cases); *Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 982 (S.D. Ind. 2008) ("Flowerbeds are in the yard of the residence and are therefore included within the curtilage and encompassed by the search warrant, at least so long as one might reasonably expect to find the objects of the search in that location."). Such an interpretation is said to make common sense. *Brown*, 822 F. Supp. at 754 ("The search warrant in this case authorized intrusion into the area of highest expectation of privacy. It seems logical and

17

reasonable that a search warrant that authorizes intrusion on this greater area of privacy would include authorization for intrusion in the lesser area of privacy, the backyard. It is a basic rule of logic that the greater generally includes the lesser."); *see also Gorman*, 104 F.3d at 275 ("If a search warrant specifying only the residence permits the search of "closets, chests, drawers, and containers" therein where the object searched for might be found, so should it permit the search of similar receptacles located in the outdoor extension of the residence, i.e., the curtilage, such as the container in this case. To hold otherwise would be an exercise in pure form over substance.").

**C.     Discussion**

Here, Defendant argues that the marijuana plants and the packages of cocaine found outside of his residence were outside the permissible scope of the search of his home. The Court disagrees.

The search warrant at issue identifies the place to be searched as "Plot 21D, La Grande Princess[e], St. Croix, Virgin Islands, as more fully described in Attachment 'A'" (Dkt. No. 51-1 at 1). In turn, "Attachment A" described 21D La Grande Princesse as consisting of "a blue-colored single-family residence that sits on the southwest corner of a large lot with two (2) additional dwellings owned by the DOWLING family . . . located approximately one hundred yards northeast from the intersection of Northside Road and Old Princesse Road." *Id*. at 11. The warrant specifically excluded only the two additional dwellings from the search.

When law enforcement officials executed the search warrant on January 30, 2017, they discovered 19 marijuana plants growing just outside the residence located at 21D La Grande Princesse and cocaine packages concealed inside a tire in the wooded fence line adjacent to the residence, located approximately five yards from Defendant's residence. In other words, these items were discovered in the immediate vicinity of Defendant's residence, i.e., his curtilage. "It is axiomatic that "[a] person's curtilage is the area immediately adjacent to his home in which he has

18

a legitimate expectation of privacy." *Bansal*, 663 F.3d at 663 (internal citation and quotation marks omitted).

The Court finds no indication in the record that law enforcement officers exceeded the scope of the warrant. Here, the "plain text" of the warrant, *id*., authorizes the search of "Plot 21D La Grande Princesse," which is referred to by the Magistrate Judge as "the premises" and described in the Attachment to the search warrant as "[a] blue-colored single-family residence" that "sits on the southwest corner of a large lot with two additional dwellings . . ." The only portions of the "plot," "large lot," or "premises" on which the single-family residence sits that are excluded from the scope of the search are the second and third dwellings on the property. Thus, law enforcement's search of the curtilage—to which Defendant admittedly has a legitimate expectation of privacy— falls squarely within the "plot," "large lot," or "premises" on which Defendant's "residence" sits and which was included within the scope of the search warrant. Conducting such a search did not go too far because, in this instance, a "warrant [that] authorized the search of the residence of the [d]efendant [calls for] [a] common sense reading of that license [which] would include the property surrounding the actual house." *Brown*, 822 F. Supp. at 754; *see also* cases cited *supra* at 17-18. Accordingly, Defendant's contention that the search executed on his property exceeded the scope of the warrant is not supported by the record.

For the foregoing reasons, the Court finds that the January 30, 2017 search conducted by law enforcement of Dowling's yard and fence line as part of law enforcement's execution of the search warrant on his residence did not exceed the scope of the warrant issued by the Magistrate Judge.[10]

---

[10] The parties also pose alternative arguments, such as whether the "plain view" doctrine and the "good faith" exception are applicable in this case. (Dkt. No. 51 at 8, 10-13; Dkt. No. 54 at 7-9). Because the Court has concluded that the warrant authorized the search of Defendant's curtilage,

## IV. CONCLUSION

For the above stated reasons, Dowling's Motion to Dismiss the Indictment and his Motion to Suppress will both be denied.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 5, 2019

                                                        _____/s/_____
                                                        WILMA A. LEWIS
                                                        Chief Judge

---

including the yard and the fence line where the controlled substances were found, it need not reach those issues.